UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-20936-CIV-LENARD/O'SULLIVAN

**YURI SUCART NAVARRO,**

    Plaintiff,

vs.

**ERIC H. HOLDER, JR., JANET NAPOLITANO, ALEJANDRO MAYORKAS and LINDA SWACINA,**

    Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (D.E. 38)

**THIS CAUSE** is before the Court on Defendants Eric Holder, Janet Napolitano, Alejandro Mayorkas, and Linda Swacina's (collectively, "Defendants") Motion to Dismiss Amended Petition ("Motion," D.E. 38), filed on April 1, 2011. Petitioner Yuri Sucart Navarro ("Sucart") filed his Response in Opposition to the Motion ("Response," D.E. 42) on May 6, 2011, to which Defendants replied on May 13, 2011 ("Reply," D.E. 43). Having reviewed Defendants' Motion, Sucart's Response, and Defendants' Reply, the Court finds as follows.

**I.**    **Factual and Procedural Background**

Yuri Sucart Navarro is a native and citizen of the Dominican Republic who has resided in the United States as a lawful permanent resident since December 14, 1990. On May 13, 1996, Sucart pled guilty in New York Supreme Court to attempted criminal sale of

a controlled substance in the third degree under New York Penal Code § 220.39. He was sentenced to a conditional discharge and a fine of $155.00 pursuant to New York Penal Code § 70.00(4), the alternative sentencing provision for a Class C felony.

Sucart, currently a resident of Florida, applied for citizenship in 2008. United States Citizenship and Immigration Services ("USCIS") denied his Application for Naturalization on August 11, 2009, finding that Sucart could not demonstrate "good moral character" due to his conviction of an aggravated felony in 1996. Sucart's appeal of USCIS' denial was affirmed by the district director on November 24, 2009. In his Petition for Review (D.E. 1), filed on March 24, 2010, Sucart requested that this Court vacate USCIS' denial of his petition and grant his application for citizenship. Defendants moved for the Court to dismiss the Petition for failure to state a claim (D.E. 8). Upon Sucart's request (D.E. 13), the Court held a hearing on the matter on October 18, 2010 (D.E. 19, 20). On December 16, 2010, the Court granted Defendants' Motion to Dismiss and granted Sucart leave to amend his Petition to fully develop his claim that his guilty plea to attempted sale of a controlled substance in the third degree does not constitute an aggravated felony (D.E. 25).

On February 25, 2011, Sucart filed his Amended Petition for Review ("Petition," D.E. 32), again requesting that the Court vacate USCIS' denial of his petition and grant his application for citizenship. In support of his Petition, Sucart argues that his 1996 guilty plea for attempted sale of a controlled substance under New York law does not preclude him from establishing good moral character because his conviction was not an aggravated felony.

(Petition 4-7.) Sucart further contends that his record since 1993 establishes his good moral character and entitles him to naturalization as a United States citizen under the Immigration and Naturalization Act ("INA"). (Id.) In addition, Sucart argues that his guilty plea was unconstitutional because at the time he accepted the plea, his attorney did not inform him of its impact on his current immigration status or his future application for citizenship. (Id. at 7-9.) Sucart cites Padilla v. Kentucky, 130 S. Ct. 1473 (2010), a case where the failure of a criminal defense attorney to advise his client of potential deportation consequences constituted ineffective assistance of counsel, for the proposition that his 1996 guilty plea, also made without consideration of future naturalization status, should not be considered by this Court when determining Sucart's moral character. (Id.)

Defendants have again moved for the Court to dismiss the Petition for failure to state a claim (D.E. 38, 38-1). They argue that Sucart's guilty plea constitutes a conviction of an aggravated felony, as defined by 8 U.S.C. § 1101(a)(43), which permanently precludes him from demonstrating the good moral character necessary for his application for citizenship to be granted. (Memorandum in Support of Motion, D.E. 38-1, at 1-2.) Furthermore, they assert that Sucart's claim of ineffective assistance of counsel in 1996 has already been decided by the Court in its December 16, 2010 Order (D.E. 25) and need not be re-addressed. (Id. at 2.) In his Response to the Motion to Dismiss his Petition, Sucart urges this Court to use its discretionary powers to grant his Amended Petition in the interests of justice. (Response, D.E. 42, at 1-2.) Sucart contends the alternative sentencing provision of New

3

York Penal Law § 70.00(4), allowing for a sentence of imprisonment of one year or less, shifts his third degree attempted sale conviction outside the classification of aggravated felony for purposes of the INA. (Id. at 4-7.) Sucart also argues that the Court should convert its ineffective assistance of counsel argument into a motion to reconsider the Court's December 16, 2010 ruling. (Id. at 7-8.)

## II.     Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss. Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.; see also Edwards v. Prime, Inc., 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard).

## III.    Discussion

Under 8 U.S.C. § 1421(c), a person may seek de novo review by a district court of a denial of a naturalization application.[1] An alien can become a United States citizen "only

---

[1] The statute also provides that the Court "shall, at the request of the petitioner, conduct a hearing de novo on the application." 8 U.S.C. § 1421(c). Sucart has not requested a hearing either in his Amended Petition or Response.

4

upon the terms and conditions specified by Congress" because "the power to make someone a citizen of the United States has not been conferred upon the federal courts . . . as one of their generally applicable equitable powers." I.N.S. v. Pangilinan, 486 U.S. 875, 883-84 (1988); see also 8 U.S.C. § 1421(d) ("A person may only be naturalized as a citizen of the United States in the manner and under the conditions prescribed in this title and not otherwise.")

To be eligible for United States citizenship, an applicant must show, inter alia, that he possesses good moral character. 8 C.F.R. § 316.10(a)(1). Conviction of an aggravated felony, as defined by 8 U.S.C. § 1101(a)(43), permanently precludes an applicant from demonstrating good moral character. 8 U.S.C. § 1101(f)(8); 8 C.F.R. § 316.10(b)(ii). The list of aggravated felonies includes "illicit trafficking of controlled substances . . . , including a drug trafficking crime (as defined in section 924(c) of title 18, United States Code)." 8 U.S.C. § 1101(a)(43)(B). "[T]he term 'drug trafficking crime' means any felony punishable under the Controlled Substances Act (21 U.S.C. § 801, et seq.) . . . ." 18 U.S.C. § 924(c)(2). The Controlled Substances Act defines a felony as "any Federal or State offense classified by applicable Federal or State law as a felony." 21 U.S.C. § 802(13).

First, Sucart argues that his crime cannot be classified as a felony under state law.[2]

---

[2] In addition, "to qualify as an 'aggravated felony' under the INA, the conduct prohibited by state law must be punishable as a felony under federal law," and "the defendant must also have been actually convicted of a crime that is itself punishable as a felony under federal law." Carachuri-Rosendo v. Holder, 130 S. Ct. 2577, 2589 (2010) (citing Lopez v. Gonzales, 549 U.S. 47, 60 (2006)). Defendants argue that Sucart's crime is punishable as a felony under the federal Controlled Substances Act, 21 U.S.C. § 801 et seq., which Sucart does

(Petition 5.)  On May 13, 1996, Sucart pled guilty to attempted criminal sale of a controlled substance in the third degree under New York Penal Code § 220.39.  Attempted criminal sale of a controlled substance was a class C felony under New York law.  See N.Y. PENAL LAW §§ 110.05(4); 220.39 (1996).  The sentencing code in effect at the time of Sucart's conviction, entitled "Sentence of imprisonment for felony," stated in relevant part:

> 1. Indeterminate sentence.  Except as provided in subdivision four . . . , a sentence of imprisonment for a felony shall be an indeterminate sentence. . . .
> 2. Maximum term of sentence.  The maximum term of an indeterminate sentence shall be at least three years and the term shall be fixed as follows:
> . . .
>> (c) For a class C felony, the term shall be fixed by the court, and shall not exceed fifteen years[.]
> 3. Minimum period of imprisonment.  The minimum period of imprisonment under an indeterminate sentence shall be at least one year and shall be fixed as follows:
> . . .
>> (b) . . . [T]he minimum period shall be fixed by the court and specified in the sentence and shall be not less than one year nor more than one-third of the maximum term imposed.

N.Y. PENAL LAW § 70.00(1)-(3).

Sucart argues that the alternative sentencing provision of New York Penal Law § 70.00(4), allowing for a sentence of imprisonment of one year or less, shifts his third degree attempted sale conviction outside the classification of aggravated felony for purposes of the INA.  When Sucart was convicted, New York Penal Law § 70.00(4) stated, in relevant part:

> 4. Alternative definite sentence for . . . certain class C felonies.  When a

---

not dispute.  (See Motion 5; see generally Response; Amended Petition.)

> person . . . is sentenced for a . . . class C felony specified in article two hundred twenty . . . and the court, having regard to the nature and circumstances of the crime and to the history and character of the defendant, is of the opinion that a sentence of imprisonment is necessary but that it would be unduly harsh to impose an indeterminate sentence, the court may impose a definite sentence of imprisonment and fix a term of one year or less.

N.Y. PENAL LAW § 70.00(4) (1996).  Sucart contends that New York Penal Code § 70.00(4) acted as a mandatory sentencing provision in Sucart's case.  Sucart argues, "Effectively, the statute required the sentencing court to reclassify a felony conviction for certain crimes, including attempted sale of a controlled substance, as a misdemeanor under limited circumstances." (Response 4; see also Petition 6-7.)  Defendants argue that the provision is discretionary, and "the possibility of a lower sentence does not alter the fact that the maximum possible sentence is still fifteen years in prison." (Motion 6.)  The Court agrees with Defendants.

The statutory language expressly stated that under certain circumstances "the court may impose" the alternative definite sentence.  N.Y. PENAL LAW § 70.00(4) (emphasis added).  Conversely, New York Penal Law § 70.00(2)(c) stated that "[f]or a class C felony, the term shall be fixed by the court, and shall not exceed fifteen years." N.Y. PENAL LAW § 70.00(2)(c) (emphasis added).  As the Supreme Court has said, "The word 'may' customarily connotes discretion.  That connotation is particularly apt where, as here, "may" is used in contraposition to the word 'shall.'" Jama v. Immigration & Customs Enforcement, 543 U.S. 335, 346 (2005).  Sucart argues that the "mere use of 'may' is not necessarily conclusive of . . . intent to provide for a permissive or discretionary authority." (Response

7

4-5 (quoting Cortex Byrd Chips, Inc. v. Bill Harbert Constr. Co., 529 U.S. 193, 198-99 (2000)).)

However, New York case law also supports the conclusion that the sentencing court was not required to impose an alternative definite sentence under New York Penal Law § 70.00(4).  A New York appellate court has stated that "[s]ubdivision 4 of section 70.00 of the Penal Law provides the sentencing court with discretionary authority to impose a definite sentence of one year or less."  People v. Germain, 51 A.D.2d 1065, 1065-66 (N.Y. App. Div. 1976) (emphasis added).  Sucart argues that People v. Masucci "stands for the proposition that when certain sentencing considerations are present a court must impose the alterative definite sentence."  (Response 6 (citing People v. Masucci, 266 A.D.2d 579, 580-81 (N.Y. App. Div. 1999)).)  In Masucci, although the sentencing court found that the defendant had accepted responsibility for his actions, the court nevertheless sentenced the defendant to the harshest possible sentence (the imposition of an indeterminate sentence of 1 1/3 to 4 years).  266 A.D.2d at 580.  The appellate court found that the sentencing court first erred by misunderstanding the Penal Law, stating that the court "seemingly viewed the statutory scheme as requiring the imposition of a sentence of 1 1/3 to 4 years, while the Penal Law clearly establishes 1 1/3 to 4 years as the harshest possible sentence if the court decides to impose an indeterminable sentence."  Id.  The appellate court found that the sentencing court compounded this error by failing to consider all possible sentencing alternatives, stating that the relevant sentencing "factors should have been considered not only on the issue of the

8

appropriate indeterminate term for each count, but also on the question of whether this was an appropriate case for an alternative definite sentence pursuant to Penal Law § 70.00(4)." Id. The court further noted that "there were number of authorized dispositions including an indeterminate sentence, with a maximum not exceeding four years and a minimum not exceeding one third of the maximum, or an alternative definite sentence." Id. (citations omitted). The court concluded that "[b]y imposing the harshest possible indeterminate sentence for each count, as though that were the sentence required by law, the County Court failed to exercise the sentencing discretion granted by Penal Law § 70.00." Id. The appellate court reversed the sentencing court because of that court's failure to consider an alternative definite sentence under Penal Law § 70.00(4), not because the sentencing court was required to impose that alternative definite sentence. See id. Therefore, New York Penal Law § 70.00(4) was, as the law stated, an "alternative" sentence that the court "may" impose, and was not, as Sucart contends, a mandatory sentencing provision.

In Sucart's case, although the sentencing court in its discretion sentenced Sucart to conditional release and a fine, he nevertheless faced a maximum possible sentence of fifteen years for the crime. Thus, Sucart was convicted of an aggravated felony and is unable to show good moral character. Much as it would like to give Sucart credit for his good behavior since 1996, his family and his professed love for the United States, the Court must strictly comply with 8 U.S.C. § 1421(d): "A person may be naturalized . . . in the manner and under the conditions prescribed in this title, and not otherwise." See also Pangilinan, 486 U.S. at

883-84 (finding that the district court does not sit as a court of equity in immigration cases and is not free to ignore the statutory directive of the INA).

Finally, citing to Padilla v. Kentucky, 130 S. Ct. 1473 (2010), Sucart again argues that his 1996 guilty plea, made without consideration of future naturalization status, should not be considered by this Court when determining Sucart's moral character.  Recognizing that the Court already considered this issue, Sucart argues that the Court should convert his argument into a motion to reconsider.  In its previous opinion, because "Sucart has presented no authority that the Supreme Court's holding in Padilla v. Kentucky should be applied retroactively or extended beyond the limited scope that 'counsel must inform their client whether the client's plea carries a risk of deportation,'" the Court "decline[d] to opine on those issues." (Order of Dec. 16, 2010, D.E. 25, at 5 (quoting Padilla, 130 S. Ct. at 1486).) Sucart cites to various district court cases that have applied Padilla retroactively; however, none of the cited cases are controlling law on this Court.  Furthermore, as the Court stated in its previous opinion, "Sucart's request that the Court find his 1996 guilty plea constitutionally deficient amounts to a collateral attack on his earlier conviction and may not be made in an immigration matter." (Order of Dec. 16, 2010, D.E. 25, at 5 (citing Taylor v. United States, 396 F.3d 1322, 1330 (11th Cir. 2005).)

Consequently, the Court finds that the claims raised in Sucart's Petition, even if factually true, do not entitle him to the relief requested and therefore must be dismissed.

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** that:

10

1.   Defendants' Motion to Dismiss (D.E. 38), filed on April 1, 2011, is **GRANTED**.

2.   Plaintiff Yuri Sucart Navarro's Amended Petition for Review (D.E. 32), filed on February 25, 2011, is **DISMISSED**.

3.   This case is now **CLOSED.**

**DONE AND ORDERED** in Chambers at Miami, Florida, this 10th day of January, 2012.

_____
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**